✎ JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Curtis Brunk, Individually and on Behalf of all Others Similarly Situated

## DEFENDANTS
Matson Navigation Company, Inc., Alexander & Baldwin, Inc., and Horizon Lines, LLC

**(b)** County of Residence of First Listed Plaintiff  Hawaii
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Laurence D. King
Kaplan Fox & Kilsheimer LLP
350 Sansome St., Suite 400
SF, CA 94104 Tel: 415-772-4700

Attorneys (If Known)

E-filing



BZ    ADR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☒ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | or Defendant) | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | 26 USC 7609 | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

Transferred from                                                            Appeal to District

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Sherman Act Sec. 1, 15 U.S.C. Sec. 1

Brief description of cause:
Unlawful price setting in violation of Sherman Act Sec. 1, 15 U.S.C. Sec. 1

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".  See attachment A hereto.

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE
June 18, 2008

SIGNATURE OF ATTORNEY OF RECORD

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

'Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                                        Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.

## ATTACHMENT A TO CIVIL COVER SHEET

**Steinberg, et al. v. Matson Navigation Company, Inc., et al.**
**3:08-cv-02402-VRW (N.D. Cal. filed May 9, 2008)**

**Acutron, Inc. v. Matson Navigation Company, Inc., et al.**
**3:08-cv-02600-VRW (N.D. Cal. filed May 22, 2008)**

**50th State Distributors, Inc. v. Matson Navigation Company, Inc., et al.**
**3:08-cv-02603-VRW (N.D. Cal. filed May 23, 2008)**



1  **KAPLAN, FOX & KILSHEIMER, LLP**
   Laurence D. King (SBN 206423)
2  Linda M. Fong (SBN 124232)
   350 Sansome Street, Suite 400
3  San Francisco, CA 94104
   Telephone: (415) 772-4700
4  Fax: (415) 772-4707
   Email: lking@kaplanfox.com
5        lfong@kaplanfox.com

6  [Additional Counsel Appear on Signature Page]

7             **UNITED STATES DISTRICT COURT**

8            **NORTHERN DISTRICT OF CALIFORNIA**

9  CURTIS BRUNK, Individually and on        )Civil Action No. _____
   Behalf of all Others Similarly Situated, )
10                                           )
                    Plaintiff,               )
11         v.                                )
                                             )**CLASS ACTION COMPLAINT**
12 MATSON NAVIGATION COMPANY,                )
   INC., ALEXANDER & BALDWIN, INC,           )
13 and HORIZON LINES, LLC,                   )**JURY TRIAL DEMANDED**
                                             )
14                                           )
          Defendants.                        )
15                                           )
                                             )
16                                           )
   ─────────────────────────────────────────)

17     Plaintiff, individually and on behalf of a class of all those similarly situated, brings this

18 action for damages and injunctive relief under the antitrust laws of the United States against

19 defendants, demanding a trial by jury, and complaining and alleging as follows:

20                         **Nature of The Case**

21     1.     This lawsuit is brought as a class action on behalf of all individuals and entities

22 who purchased Domestic Noncontiguous Off Shore Trades Services (defined herein) for trade

23 routes between Hawaii and the continental United States, or its territories and possessions (the

24 "Hawaii trade routes") (collectively, "Hawaii shipping services"), directly from defendants,

25 their predecessors, parents, or controlled subsidiaries and affiliates from at least as early as

26 May 23, 2004, or earlier. Plaintiff alleges that during the Class Period (defined herein) the

27 defendants conspired to allocate markets or engage in other anticompetitive conduct

28 concerning Hawaii shipping services. Because of defendants' unlawful conduct, plaintiff and

─────────────────────────────────────────────────────

1  other class members paid artificially inflated prices for Hawaii shipping services, and as a

2  result, have suffered antitrust injury to their business or property.

3  2.    Specifically, this case focuses on defendants' unlawful agreements to, *inter alia*,

4  increase and fix fuel and other surcharges (which account for approximately 20% of

5  defendants' revenue), and decrease capacity to bolster prices.

6  3.    Fuel surcharges have moved in lockstep since 1999, with defendants Matson and

7  Horizon, by agreement, imposing an identical or nearly identical surcharges. However, the

lockstep changes in fuel surcharges, which are calculated as a percentage of revenue, make no

8  economic sense as defendants have different utilization rates and cost structures. The lockstep

9  nature of the fuel surcharges, combined with defendants' differing cost structures, belies any

10  argument that the surcharges are the result of anything other than defendants' collusion.

11  4.    Similarly, defendants had unique control over capacity in the Hawaii market and

12  agreed to carry each other's extra cargo at discount prices. Absent this agreement, each

13  defendant would have needed to increase its own capacity, and that increased capacity would

14  have placed downward pressure on prices.

15                                          **Jurisdiction and Venue**

16  5.    This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C.

17  §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees,

18  against defendants for the injuries sustained by plaintiff and the members of the class by reason

19  of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

20  6.    This action is also instituted to secure injunctive relief against defendants to

prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

21  7.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by

22  Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

23  8.    Venue is found in this district pursuant to Sections 4, 12 and 16 of the Clayton

24  Act, 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d). Venue is proper in this

25  judicial district because during the Class Period one or more of the defendants resided,

26  transacted business, was found, or had agents in this district, and because a substantial part of

27

28

1  the events giving rise to plaintiff's claims occurred, and a substantial portion of the affected
2  interstate trade and commerce described below has been carried out, in this district.

3      9.    Defendants, on information and belief, maintain offices, have agents, transact
4  business, or are found within this judicial district.

## Plaintiff

6

7      10.   Plaintiff Curtis Brunk was at all relevant times a resident of Hawaii. During the
8  relevant time period, plaintiff purchased Hawaii shipping services from a defendant. The
9  prices paid by plaintiff for Hawaii shipping services were, as a result of the conspiracy herein
10  alleged, higher than they otherwise would have been, and as a result of the alleged conspiracy,
   plaintiff was injured by reason of the antitrust violations alleged herein.

11

## Defendants

12     11.    Defendant Matson Navigation Company, Inc. ("Matson") is a Hawaiian
13  corporation with its principal place of business in Oakland, California. Matson is a wholly-
14  owned subsidiary of Defendant Alexander & Baldwin, Inc. Matson is a principal provider of
15  Hawaii shipping services. Defendant Matson marketed and/or sold Hawaii shipping services
16  in this district and the United States and its territories and possessions during the Class Period.

17     12.    Defendant Alexander & Baldwin, Inc. ("A&B") is a Hawaiian corporation with
18  its principal place of business in Honolulu, Hawaii. A&B is a multi-industry corporation
19  whose ocean transportation operations are conducted by its wholly-owned subsidiary Matson.
20  By and through Matson, A&B sold Hawaii shipping services in this district and the United
21  States and its territories and possessions during the Class Period.

22     13.    Defendant Horizon Lines, LLC ("Horizon"), is a Delaware limited liability
   company with its principal place of business in Charlotte, North Carolina. Horizon is a
23  wholly owned operating subsidiary of Horizon Lines, Inc., a Delaware corporation with its
24  principal place of business in Charlotte, North Carolina. Defendant Horizon marketed and/or
25  sold Hawaii shipping services in this district and the United States and its territories and
26  possessions during the Class Period.

27

28

Page 3 – CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1  14.  Whenever in this Complaint reference is made to any act, deed or transaction of
2  any corporation, the allegation means that the corporation engaged in the act, deed or
3  transaction by or through its officers, directors, agents, employees or representatives while
4  they were actively engaged in the management, direction, control or transaction of the
5  corporation's business or affairs.

6  15.  Various other persons, firms and corporations, not named as defendants in this
7  complaint, have participated as co-conspirators with defendants in the violations alleged herein,
8  and aided, abetted and performed acts and made statements in furtherance of the conspiracy.

## The Jones Act

9  16.  For purposes of this complaint, "Domestic Noncontiguous Off Shore Trades
10  Services" are merchandise shipping services, primarily by container and/or barge, in the
11  coastwise (*i.e.*, domestic) trade. These services are governed by the Merchant Marine Act of
12  1920, commonly referred to as the "Jones Act." 46 U.S.C. § 100 *et. seq*.

13  17.  The coastwise trade includes the transportation of merchandise between Hawaii
14  and points in the United States and/or most of its island territories and possessions. *See* 46
15  U.S.C. § 55101 (extending coastwise laws to island territories and possessions except
16  American Samoa, the Northern Mariana Islands, and the U.S. Virgin Islands).

17  18.  The Jones Act is a protectionist statute that prohibits any goods "transported by
18  water, or by land and water . . . between points in the United States . . . either directly or via a
19  foreign port," from being shipped unless the vessel "is wholly owned by citizens of the United
20  States for purposes of engaging in the coastwide trade" and has been issued a "certificate of
21  documentation" or is exempt from documentation. 46 U.S.C. § 55102.

22  19.  The coastwise trade laws—*i.e.*, the Jones Act—grant an exclusive privilege to
23  certain U.S. owned vessels to engage in the coasting trade concerning shipment of merchandise
24  to or from U.S. territories, possessions, or non-contiguous States, including shipments to and
   from Hawaii.

25  20.  The Jones Act seeks "to protect American shipping industry already engaged in
26  the coastwise trade." *Marine Carriers Corp. v. Fowler*, 429 F.2d 702, 708 (2d Cir. 1970).
27
28

1    21.    The Jones Act's restriction on the carriage of domestic cargoes to U.S.-owned
2  ships, combined with the relatively small size of these trade routes, results in an oligopolistic
3  markets where only a very small number of carriers serve any route.

4    22.    Collusion, market sharing, allocation of customers, restriction of capacity and
5  other anticompetitive conduct is illegal under the Sherman Act, subject to certain exemptions
6  not applicable here. *See* 46 U.S.C. § 40307 (listing exemptions).

7                              **The Hawaii Trade Routes Market**

8                                  **Violations Alleged**

9    23.    The Jones Act limits competition in the coastwise market for shipping such that
10  a few carriers dominate these trade lanes. As one analyst explained: "The U.S. Jones Act trade
     lanes have historically been oligopolies."

11    24.    There are numerous barriers to entry for companies attempting to enter the
12  Hawaii trade routes market. Competition is limited by, *inter alia*: the Jones Act; substantial
13  upfront costs; and a substantial lag time between deciding to enter and actually being able to
14  enter because of the need for U.S. built ships—which are limited in supply and take time to
15  construct—and adequate port facilities. Thus, competitors or potential market entrants lack the
16  capacity to increase output in the short run.

17    25.    As defendant Horizon explained in its 2007 form 10-K: "Given the limited
18  number of existing Jones Act qualified vessels, the high capital investment and long delivery
19  lead times associated with building a new containership in the U.S., the substantial investment
20  required in infrastructure and the need to develop a broad base of customer relationships, the
21  markets in which we operate have been less vulnerable to over capacity and volatility than
     international shipping markets."

22    26.    The high degree of concentration in the industry makes it easier for competitors
23  to engage in anticompetitive conduct because fewer, repeat providers control the vast majority
24  of any Jones Act shipping route.

25    27.    In the Hawaii trade routes, for example, defendants Horizon and Matson account
26  for nearly 100 percent of the market.

27

28

Page 5 – CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

28.     Hawaii shipping services are highly fungible, such that purchasers decide to purchase and competitors compete largely based on price.

29.     Though fungible between Jones Act carriers, Hawaii shipping services are not readily substitutable for by other methods of transportation. For example, shipping heavy, bulky goods via air freight is prohibitively expensive, and there obviously are no road or rail routes between Hawaii and the mainland United States.

30.     Price fixing and market allocation is especially pernicious within a highly concentrated, fungible market for which adequate substitutes do not exist, as here in the Hawaii trade routes market.

31.     The structure of the Hawaii trade routes market is such as to make secret price-fixing feasible. The market is highly concentrated with few sellers, almost all of whom are the defendants. Further, Domestic Noncontiguous Off Shore Trades Services are a highly standardized product. Demand is inelastic and there are barriers to entry in the form of expensive machinery and economies of scale.

32.     Anti-competitive agreements in Hawaii trade routes can take various forms, including: market allocation; restricting supply; and bunker/fuel and other surcharges.

33.     Beginning at least as early as May 23, 2004 or earlier, the exact dates being unknown to plaintiff, defendants engaged in a continuing agreement, understanding and conspiracy in restraint of trade to restrict competition, allocate customers, restrict capacity, and otherwise engage in anticompetitive conduct to allocate the market for or engage in anticompetitive conduct concerning the Hawaii shipping services and/or engaged in market allocation of those services in the United States, its territories and possessions in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

34.     The contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action between the defendants, the substantial terms of which were to allocate the market for or engage in anticompetitive conduct concerning Hawaii shipping services in the United States, its territories and possessions.

1    35.    In formulating and effectuating the aforesaid contract, combination or

2    conspiracy, defendants did those things that they unlawfully combined and conspired to do,

3    including, among other things:

4           a.    agreeing to allocate the market and/or customers for Hawaii shipping

5    services;

6           b.    exchanging information on customers and capacity and;

7           c.    monitoring and implementation of the arrangements among cartel

     members.

8    36.    The activities described above have been engaged in by defendants for the

9    purpose of effectuating the unlawful agreements concerning market allocation, restricting

10   capacity, and other anticompetitive conduct concerning for Hawaii shipping services.

11   37.    Any Jones Act exemptions are not applicable here.

12                          **The Hawaii Trade Routes**

13   38.    The Hawaii trade routes market is distinct from other Jones Act trade routes.

14   39.    The Hawaii trade routes market is dominated by defendants Matson and

15   Horizon.

16   40.    Defendants have access to industry data (including data from the Port Import

17   Export Reporting Service) concerning the Hawaii trade routes market and participate in trade

18   associations (like the Maritime Cabotage Task Force) which facilitates efficient monitoring of

19   defendants' collusive agreements.

20       **a. Fuel Surcharges**

21   41.    In 1999 or earlier, defendants began imposing fuel surcharges, and those

     surcharges have grown over time.  The surcharges are calculated as a percentage of revenue.

22   42.    Defendants agreed that they would set fuel surcharges at identical rates, rates

23   that were divorced from any precompetitive or lawful economic rationale.  The surcharges are

24   reflected in the below chart:

25                  **Hawaiian Ocean Shipping Rate Increases 1999 to 2007**

26

27

28

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---------|----------------------------------|-----------------------------------|----------------------------|------------------------------------------------|
| Matson Navigation | 10/1999 | 1 to 1.75% | | |
| Horizon Lines | 10/1999 | 1 to 1.75% | | |
| | | | | |
| Matson Navigation | 2/2000 | 1.75 to 2.25% | | |
| Horizon Lines | 2/2000 | 1.75 to 2.25% | | |
| | | | | |
| Matson Navigation | 4/2000 | 2.25 to 3.25% | | |
| Horizon Lines | 4/2000 | 2.25 to 3.25% | | |
| | | | | |
| Matson Navigation | 10/2000 | 3.25 to 4.25% | | |
| Horizon Lines | 10/2000 | 3.25 to 4.25% | | |
| | | | | |
| Matson Navigation | 11/2001 | 4.25 to 3.25% | | |
| Horizon | 11/2001 | 4.25 to 3.25% | | |

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| *Lines* | | | | |
| | | | | |
| Matson Navigation | 5/2002 | 3.25 to 4.75% | | |
| *Horizon Lines* | 5/2002 | 3.25 to 4.75% | | |
| | | | | |
| Matson Navigation | 10/2002 | 4.75 to 6.00% | | |
| *Horizon Lines* | 10/2002 | 4.75 to 6.00% | | |
| | | | | |
| Matson Navigation | 3/2003 | 6.00 to 7.50% | | |
| *Horizon Lines* | 3/2003 | 6.00 to 7.50% | | |
| | | | | |
| Matson Navigation | 5/2004 | 7.5 to 8% | | |
| *Horizon* | 5/2004 | 7.5 to 8% | | |

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Lines | | | | |
| | | | | |
| Matson Navigation | 6/2004 | 8 to 8.8% | | |
| Horizon Lines | 6/2004 | 8 to 8.8% | | |
| | | | | |
| Matson Navigation | 102004 | 8.8 to 9.2% | | |
| Horizon Lines | 10/2004 | 8.8 to 9.2% | | |
| | | | | |
| Matson Navigation | 4/2005 | 9.2 to 10.5% | | |
| Horizon Lines | 4/2005 | 9.2 to 10.5% | | |
| | | | | |
| Matson Navigation | 7/2005 | 10.5 to 11.5% | | |
| Horizon Lines | 7/2005 | 10.5 to 11.5% | | |
| | | | | |

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Matson Navigation | 10/2005 | 11.5 to 13% | | |
| *Horizon Lines* | 10/2005 | 11.5 to 13% | | |
| | | | | |
| Matson Navigation | 11/2005 | | $125/Westbound $75/Eastbound Approx. 3.9% | $60/Westbound $30/Eastbound Approx. 22% |
| *Horizon Lines* | 11/2005 | | $125/Westbound $75/Eastbound | $60/Westbound $30/Eastbound |
| | | | | |
| Matson Navigation | 12/2005 | 13 to 15% | | |
| *Horizon Lines* | 12/2005 | 13 to 15% | | |
| | | | | |
| Matson Navigation | 3/2006 | 15 to 18.5% | | |
| *Horizon Lines* | 3/2006 | 15 to 18.5% | | |
| | | | | |
| Matson | 5/2006 | 18.5 to 21.25% | | |

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| Navigation | | | | |
| *Horizon Lines* | 5/2006 | 18.5 to 21.25% | | |
| | | | | |
| Matson Navigation | 9/2006 | 21.25 to 19.75% | | |
| *Horizon Lines* | 9/2006 | 21.25 to 19.75% | | |
| | | | | |
| Matson Navigation | 10/2006 | 19.75 to 18.75% | | |
| *Horizon Lines* | 10/2006 | 19.75 to 18.75% | | |
| | | | | |
| Matson Navigation | 11/2006 | | $100/Westbound $50/Eastbound | $150/Westbound $75/Eastbound |
| *Horizon Lines* | 11/2006 | | $100/Westbound $50/Eastbound | $150/Westbound $75/Eastbound |
| | | | | |
| | | | | |
| | | | | |

| | Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | Matson Navigation | 1/2007 | 18.75 to 17.5% | | |
| 7 | | | | | |
| 8 | Horizon Lines | 1/2007 | 18.75 to 17.5% | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | Matson Navigation | 2/2007 | 17.5 to 19.5% | | |
| 12 | | | | | |
| 13 | Horizon Lines | 2/2007 | 17.5 to 19.5% | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | Matson Navigation | 4/2007 | 19.5 to 20.75% | | |
| 17 | | | | | |
| 18 | Horizon Lines | 4/2007 | 19.5 to 20.75% | | |
| 19 | | | | | |
| 20 | Matson Navigation | 5/2007 | 20.75 to 22.5% | | |
| 21 | | | | | |
| 22 | Horizon Lines | 5/2007 | 20.75 to 22.5% | | |
| 23 | | | | | |
| 24 | | | | | |
| 25 | Matson Navigation | 7/2007 | 22.5 to 24% | | |
| 26 | | | | | |
| 27 | Horizon | 7/2007 | 22.5 to 24% | | |
| 28 | | | | | |

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|
| *Lines* | | | | |
| | | | | |
| Matson Navigation | 10/2007 | 24 to 26% | | |
| *Horizon Lines* | 10/2007 | 24 to 26% | | |
| | | | | |
| Matson Navigation | 11/2007 | 26 to 29% | | |
| *Horizon Lines* | 11/2007 | 26 to 29% | | |
| | | | | |

43.     These lockstep surcharges calculated as a percentage of revenue make no economic sense because defendants have different cost structures and utilization rates. For example, defendants Horizon and Matson have different operating expenses and margins. If defendants' surcharges were a reflection of economics rather than collusion, the surcharges would not have moved in lockstep when defendants' margins were different.

**b. Artificial Capacity Limitations**

44.     Defendants agreed to limit capacity and thereby increase rates to supracompetitive levels.

45.     Defendants effectuated this agreement by carrying—at vastly discounted rates— each other's containers. For example, when Horizon had more customers than it could handle on its ships, Matson carried containers that had been shipped with Horizon, and *vice versa*.

1    46.    Absent this agreement, the only way that either competitor would have been

2    able to maintain its current level of business would have been by adding capacity. This

3    additional capacity, however, would have had the (procompetitive) effect of lowering prices.

4    47.    Defendants have collaborated—not competed—with each other to stabilize the

5    amount of shipping services available, and thereby maintain supracompetitive prices

6    48.    Unsurprisingly, the cost of shipping to Hawaii has risen substantially in recent

7    years, in part due to defendants' collusive anticompetitive agreements.

8    **Government Antitrust Investigation**

9    49.    On April 17, 2008, it was disclosed that the United States Department of Justice

began an investigation into the Domestic Noncontiguous Shore Trades Services industry in a

10    similar market: the trade routes between Puerto Rico and the continental United States. On or

11    about April 17, defendants Horizon and Matson both disclosed that either warrants to search

12    their premises had been issued or that they had been subpoenaed in connection with the DOJ's

13    investigation. The investigation is not limited to the Puerto Rico market, and defendant Matson

14    is being investigated by the DOJ even though it has no presence in the Puerto Rico market.

15    50.    To obtain search warrants the United States had to have probable cause,

16    accepted by a court, to believe that it would obtain evidence of an antitrust violation from the

17    search warrant – that is, the United States had to have evidence sufficient to warrant a person of

18    reasonable caution to believe that raiding the offices of a seemingly lawful business would

19    uncover evidence of antitrust violations and the court had to have examined and accepted that

20    evidence. That belief, which was recounted in sworn affidavit or by testimony, must be

21    grounded on reasonably trustworthy information.

22

23    **Class Action Allegations**

24    51.    Plaintiff brings this action on behalf of itself and as a class action under the

25    provisions of Rule 23(a) and (b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf

26    of all members of the following class:

27

28

All persons (excluding governmental entities, defendants, co-conspirators, other sellers or providers of Hawaii shipping services, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased Hawaii shipping services directly from any of the defendants, or any present or former parent, subsidiary or affiliate thereof, at any time during the period from at least May 23, 2004, or earlier, until the effects of defendants' anticompetitive conduct cease.

52.     Plaintiff believes that there are hundreds or thousands of class members as above described, the exact number and their identities being known by defendants.

53.     The class is so numerous and geographically dispersed that joinder of all members is impracticable.

54.     There are questions of law and fact common to the class, which questions relate to the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a result thereof, including, but not limited to:

a.     Whether defendants engaged in a combination and conspiracy among themselves to allocate the market for or engage in other anticompetitive conduct concerning Hawaii shipping services.

b.     The identity of the participants in the conspiracy;

c.     The duration of the conspiracy alleged in this complaint and the nature and character of the acts performed by defendants in furtherance of the conspiracy;

d.     Whether the alleged conspiracy violated Section 1 of the Sherman Act;

e.     Whether the conduct of defendants, as alleged in this complaint, caused injury to the business and property of plaintiff and other members of the class;

f.     The effect of defendants' conspiracy on the prices of Hawaii shipping services sold during the Class Period; and

g.     The appropriate measure of damages sustained by plaintiff and other members of the class.

55.     Plaintiff is a member of the class, plaintiff's claims are typical of the claims of the class members, and plaintiff will fairly and adequately protect the interests of the members of the class.

56.     Plaintiff's interests are coincident with and not antagonistic to those of the other members of the class.

57.     Plaintiff is represented by counsel who is competent and experienced in the prosecution of antitrust and class action litigation.

58.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications.

59.     Defendants have acted, and refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

60.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**Trade and Commerce**

62.     The activities of defendants, as described in this complaint, were within the flow of, and substantially affected, interstate commerce.

63.     During the time period covered by this complaint, defendants marketed and sold Hawaii shipping services.

64.     Defendants, and each of them, have used instrumentalities of interstate commerce to market and sell Hawaii shipping services.

65.     Defendants have marketed and sold Hawaii shipping services in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which defendants market and sell such services.

**Fraudulent Concealment**

66.     Plaintiff had no knowledge of defendants' unlawful self-concealing conspiracy and could not have discovered the contract, combination or conspiracy until April 17, 2008 by the exercise of due diligence because of the deceptive practices and techniques of secrecy employed by defendants to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

1     67.    Because the contract, combination or conspiracy was kept secret by defendants,

2    Plaintiff was unaware of the anticompetitive conduct concerning of Hawaii shipping services

3    that were secretly agreed upon as alleged herein. It was not until April 17, 2008, the date on

4    which it was disclosed that the Federal Bureau of Investigation executed search warrants on the

5    premises of defendant Horizon, that plaintiff became aware, or could have become aware with

6    the exercise of reasonable diligence, of defendants' anticompetitive conduct.

7     68.    As a result of the fraudulent concealment of the conspiracy, plaintiff asserts the

     tolling of the applicable statute of limitations affecting the right of action by plaintiff.

8
                                         **COUNT I**
9
              **Unlawful Price Setting in Violation of Sherman Act § 1, 15 U.S.C. § 1**

10    69.    Plaintiff incorporates by reference as if fully set forth herein the allegations

11    contained in the preceding paragraphs of this complaint.

12    70.    Defendants colluded and agreed in unlawful restraint of trade to fix prices and

13    surcharges and allocate the Hawaii trade routes market.

14    71.    Defendants' unlawful conduct resulted in artificially high supra-competitive

15    prices charged by defendants to plaintiff and the members of the class of direct purchasers of

16    Hawaii shipping services.

17    72.    Plaintiff and members of the class had to pay more for Hawaii shipping services

18    than they would have paid in a competitive marketplace, unfettered by defendants' collusive

19    and unlawful price-fixing.

20    73.    Plaintiffs seek to recover for these overcharge damages.

21    74.    As a direct and proximate result of defendants' scheme, plaintiff and the

     members of the class have been injured and financially damaged in their respective businesses
22
     and property, in amounts which are presently undetermined. Plaintiff's injuries consist of
23
     paying higher prices to purchase Hawaii shipping services than it would have paid absent
24
     defendants' conduct. Plaintiff's injuries are of the type the antitrust laws were designed to
25
     prevent and flow from that which makes defendants' conduct unlawful.
26
                                    **Jury Trial Demand**
27

28

1       Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury of all of the claims

2 asserted in this complaint so triable.

3 **Prayer For Relief**

4       **WHEREFORE**, Plaintiff prays as follows:

5       A.     That the Court determine that this action may be maintained as a class action

6 under Rule 23 of the Federal Rules of Civil Procedure.

7       B.     That the contract, combination or conspiracy, and the acts done in furtherance

8 thereof by defendants, be adjudged to have been in violation of Section 1 of the Sherman Act,

15 U.S.C. § 1.

9       C.     That judgment be entered for plaintiff and members of the class against

10 defendants for three times the amount of damages sustained by plaintiff and the class as

11 allowed by law, together with the costs of this action, including reasonable attorneys' fees.

12       D.     That defendants, their affiliates, successors, transferees, assignees, and the

13 officers, directors, partners, agents and employees thereof, and all other persons acting or

14 claiming to act on their behalf, be permanently enjoined and restrained from, continuing to

15 engage in the anticompetitive conduct described herein.

16       E.     That plaintiff and members of the class have such other, further and different

17 relief as the case may require and the Court may deem just and proper under the circumstances.

18 Dated: June 18, 2008

19

20               Respectfully submitted,

21               **KAPLAN FOX & KILSHEIMER LLP**

22               By: _____

23               Laurence D. King (SBN 206423)
Linda M. Fong (SBN 124232)

24               350 Sansome Street, Suite 400
San Francisco, CA 94104

25               Telephone: (415) 772-4700
Fax: (415) 772-4707

26               Email: lking@kaplanfox.com

27                       lfong@kaplanfox.com

28

1

-and-

2

**SPECTER SPECTER EVANS**
    **& MANOGUE, P.C.**

3

John C. Evans

4

The 26th Floor Koppers Building

436 Seventh Avenue

5

Pittsburgh, PA 15219

Telephone: (412) 642-2300

6

Fax: (412) 642-2309

Email: john@ssem.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28